UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHARLENE LYNETTE LASORDA,

       Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant,

                             /

Case No.  1:16-CV-435

HON. PAUL L. MALONEY

## OPINION

This is a social security action brought under 42 U.S.C. § 405(g) to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act.  Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.

## STANDARD OF REVIEW

The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).  The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  It is the Commissioner who is charged with finding the facts relevant to an application for

disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever evidence in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was fifty-four years of age as of her alleged disaiblity onset date. (PageID.32, 100.) She obtained a high school education, attended some college, and was previously employed as a senior vice president of a bank and as a life insurance agent. (PageID.53, 71.) Plaintiff applied for DIB on June 4, 2013, alleging that she had been disabled since February 11, 2012, due anxiety and depression.[1]

---

[1] This date is the day after an administrative law judge (ALJ) denied a previous application for benefits that had been filed by Plaintiff. (PageID.79–93.) That decision was affirmed by the Appeals Council on May 22, 2013, and does not appear to have been further appealed. (PageID.94–99.) In the instant case, the ALJ recognized the prior application,

(PageID.100, 161–173.)  Plaintiff's application was denied on August 5, 2013, after which time she

requested a hearing before an ALJ.  Around the same time, Plaintiff filed her SSI application.

(PageID.114–117, 120, 161–173.)  Plaintiff's SSI application was elevated such that it was considered

along with her DIB application at the August 22, 2014, administrative hearing with ALJ Thomas L. Walters.

(PageID.48–77.)   In a partially favorable decision dated October 2, 2014, the ALJ determined that

Plaintiff was not disabled prior to January 8, 2013, but became disabled on that date and continued to be

disabled through the date of the decision.  For purposes of Plaintiff's DIB application, the ALJ concluded

that Plaintiff was not disabled at any time through June 30, 2012, her date last insured.[2]  (PageID.32–47.)

On March 2, 2016, the Appeals Council declined to review the ALJ's decision, making it the

Commissioner's final decision in the matter. (PageID.27–31.)  Plaintiff subsequently initiated this action

under 42 U.S.C. § 405(g).

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating

disability.  *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[3]  If the Commissioner can make a dispositive

---

but determined he was not bound by the decision because of new and material evidence.  (PageID.36.)

[2]  To be eligible for DIB under Title II of the Social Security Act, a claimant must establish that she became disabled prior to the expiration of her insured status, here June 30, 2012.  *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

[3]1.   An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2.   An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3.   If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of

finding at any point in the review, no further finding is required.  *See* 20 C.F.R. §§ 404.1520(a),

416.920(a).  The regulations also provide that if a claimant suffers from a nonexertional impairment as well

as an exertional impairment, both are considered in determining the claimant's residual functional capacity

(RFC).  *See* 20 C.F.R. §§ 404.1545, 416.945.

Plaintiff has the burden of proving the existence and severity of limitations caused by her

impairments and that she is precluded from performing past relevant work through step four.  *Jones v.*

*Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).  At step five, it is the Commissioner's burden

"to identify a significant number of jobs in the economy that accommodate the claimant's residual functional

capacity (determined at step four) and vocational profile."  *Id.*

ALJ Walters determined that prior to January 8, 2013, Plaintiff's claim failed at step five.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged

disability onset date.  (PageID.39.)  At step two, the ALJ found that Plaintiff suffered from the severe

impairments of: (1) anxiety; (2) depression; (3) status post right knee arthroscopy; and (4) transient

ischemic attack (TIA).  (PageID.39–40.)  At step three, the ALJ found that Plaintiff did not have an

impairment or combination of impairments that met or equaled the requirements of the Listing of

Impairments found in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  (PageID.40.)  At step four, the ALJ

---

Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d), 416.920(d));

4.    If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5.    If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. (20 C.F.R. §§ 404.1520(f), 416.920(f)).

determined Plaintiff retained the RFC based on all the impairments to perform:

> light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she cannot walk beyond one to two city blocks at any one time. The claimant can only have occasional contact with the public; and can not work around machinery or unprotected heights. She can only do simple, repetitive tasks with a specific vocational preparation (SVP) rating of 1 or 2.

(PageID.40.) Continuing with the fourth step, the ALJ determined that Plaintiff was unable to perform any of her past relevant work. (PageID.42.)

At the fifth step, the ALJ concluded that prior to January 8, 2013, Plaintiff was an individual closely approaching advanced age and considering her age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that she could have performed. In making this finding the ALJ relied on the testimony of the vocational expert from the administrative hearing. *See Richardson*, 735 F.2d at 964. The expert testified that Plaintiff could perform other work as a small product assembler (223,000 national jobs), information clerk (56,000 national jobs), and garment sorter (223,000 national jobs). (PageID.72.) Based on this record, the ALJ found that Plaintiff was capable of making a successful adjustment to work that exists in significant numbers in the national economy prior to January 8, 2013. (PageID.43.)

Beginning January 8, 2013, however, the ALJ determined that Plaintiff's age category changed to an individual of advanced age. (PageID.42.) Therefore, the ALJ determined that beginning on this date, considering Plaintiff's age, education, work experience, and RFC, a finding of "disabled" was directed by application of Medical-Vocational Rule 202.06.

Accordingly, the ALJ concluded that Plaintiff was not disabled prior to January 8, 2013,

but became disabled on that date and continued to be disabled through the date of decision, October 2,

2014. (PageID.44.) Plaintiff, however, was not under a disability at any time prior to her date last insured

of June 30, 2012.  (PageID.44.)


**DISCUSSION**

**1.      The ALJ's RFC Determination is Supported by Substantial Evidence.**

A claimant's RFC represents the "most [a claimant] can still do despite [the claimant's]

limitations." *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x 502, 505 (6th Cir. 2014.); *see also* SSR

96-8p, 1996 WL 374184 at *1 (July 2, 1996) (stating a claimant's RFC represents her ability to perform

"work-related physical and mental activities in a work setting on a regulation and continuing basis," defined

as "8 hours a day, for 5 days a week, or an equivalent work schedule"). Plaintiff argues that the ALJ's

RFC determination cannot be sustained in light of the "unrebutted evidence of record that [she] uses a cane

to aide ambulation." (PageID.399.)

Nowhere in this argument, however, does Plaintiff reference a record demonstrating that

she requires the use of a cane to ambulate. Earlier in her brief, Plaintiff says her treating orthopedic surgeon

had opined that her right knee is unstable, needs a brace and a cane assistance for walking."

(PageID.395.) But if that is so, such opinion is not present in this record. Plaintiff does not cite anywhere

in the record where this opinion may be found, nor has a thorough review of the record by the Court

revealed such an opinion. The Commissioner argues, therefore, that Plaintiff has waived this claim of error.

(PageID.417.) Plaintiff responds by stating that she testified at the hearing she needs a cane and the ALJ

6

did not specifically find this portion of her testimony not to be credible. (PageID.430.) It is not clear if

Plaintiff is raising a new credibility claim of error here. If she is, it would be waived as it is well established

that a reply brief is not the proper place to raise new arguments. *See e.g.*, *Sanborn v. Parker*, 629 F.3d

554, 579 (6th Cir. 2010); *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008).   But

whether taken as a challenge the ALJ's RFC determination, or a challenge to the ALJ's credibility analysis,

the record in this case simply does not support Plaintiff's contention.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment,

may be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984); *see*

*also Grecol v. Halter*, 46 F. App'x 773, 775 (6th Cir. 2002).  As the relevant Social Security regulations

make clear, however, a claimant's "statements about [her] pain or other symptoms will not alone establish

that [she is] disabled." 20 C.F.R. § 416.929(a); *see also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525,

531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)); *Hash v. Comm'r of Soc. Sec.*, 309 F. App'x

981, 989 (6th Cir. 2009).  Instead, a claimant's assertions of disabling pain and limitation are evaluated

under the following standard:

> First, we examine whether there is objective medical evidence of an
> underlying medical condition. If there is, we then examine: (1) whether
> objective medical evidence confirms the severity of the alleged pain arising
> from the condition; or (2) whether the objectively established medical
> condition is of such a severity that it can reasonably be expected to
> produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard.

*See Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 801 (6th Cir. 2004).

Accordingly, "subjective complaints may support a finding of disability only where objective

medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Id.* (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Id.* (citing *Walters*, 127 F.3d at 531); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) (quoting *Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972) ("[i]t [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony")). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 780 (6th Cir. 1987). In fact, as the Sixth Circuit has stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (citation omitted).

The ALJ noted that Plaintiff testified she used a cane when she went for walks. (PageID.41, 58, 60.) He found, however, that the Plaintiff's testimony was not entirely credible. (PageID.41.) This determination is supported by substantial evidence.

On August 28, 2012, Plaintiff went to the ER after falling when getting off a bus. She complained of pain in her left shoulder and wrist, as well as in her right knee. An exam of her right knee

demonstrated moderate tenderness and swelling. There was a limited range of motion secondary to pain. While x-rays were negative, a physician suspected ligament injury. Plaintiff's knee was immobilized and she was given crutches with a referral to an orthopedic surgeon. (PageID.240–245.)

On September 10, 2012, Plaintiff visited Dr. Michael McDermott, an orthopedic surgeon. Plaintiff described a "fullness and popping in her knee" that felt "wobbly." (PageID.339.) A physical exam demonstrated a moderate sized effusion. The doctor suspected a medical meniscus tear and a possible ACL tear, and ordered an MRI scan. He said Plaintiff could use crutches or a walker as necessary. (PageID.339–340.) Plaintiff next saw Dr. McDermott on September 21, 2012, to go over her MRI scans. The scan revealed a tear of the lateral meniscus with some chondromalacia of the lateral compartment. Finding that conservative management had failed, surgery was ordered. (PageID.338.) Accordingly, Plaintiff underwent a right knee arthroscopy with partial lateral meniscectomy and chondroplasty of the lateral femoral condyle on October 4, 2012. (PageID.297.) When she was seen for a two-week checkup post surgery, she was doing well. There was a "little bit of an effusion" and she was able to flex her knee to 120 degrees, about three to four degrees shy of full extension. She was told to plan activities as tolerated and return in three or four weeks if there was trouble with motion. (PageID.337.) On January 7, 2013, Plaintiff returned to Dr. McDermott, stating that she had been doing well up until a week ago. She felt that there was worsening pain and swelling, and she walked with a limp. An exam found full range of motion, but some slight effusion and tenderness. Dr. McDermott believed she had an exacerbation of her arthritis and scheduled a follow up appointment at which point he indicated that if things had not improved, he would consider an injection to treat the pain. (PageID.336.)

On February 22, 2013, Plaintiff followed up with the doctor for an injection. A physical

examination found that she had full range of motion and was stable.  She was given an injection. (PageID.335.) On March 25, 2013, she stated that the injection worked for several weeks, and wondered about receiving another injection.  A physical examination found that the knee was unchanged.  It was stable with full range of motion.  There was 5/5 strength.  Dr. McDermott discussed the general course of treatment for patients with arthritis.  Plaintiff told the doctor she did not want to consider surgery, as she had a bad reaction to the medication she received during her arthroscopy.  Instead she elected to receive another injection.  (PageID.334.)

On June 25, 2013, Plaintiff stated that the injection helped, but she had a few "buckling" episodes, and wondered about a brace for the knee.  A physical exam found she was stable with full range of motion, 5/5 strength, and brisk refill.  She did have some medial tenderness, so Dr. McDermott fitted her with a "Don Joy" brace.  (PageID.333.) On July 9, 2013, Plaintiff said her right knee felt much better when she used the brace, but when it was off, "especially at the end of the day when she has been busy" it was painful.  A physical exam found tenderness on the medial side, but she had full extension.  The knee was stable.  (PageID.332.) On August 12, 2013, Plaintiff inquired about another injection.  A physical examination found her knee was stable with full range of motion.  She was informed of strengthening exercises for her knee and given another injection.  (PageID.331.)

On September 27, 2013, she complained of feeling a pop in her knee while walking.  There was pain with any motion.  On exam, Dr. McDermott found the knee "looks pretty good."  There was no effusion or joint line tenderness.  She had a negative Lachman's test.  The doctor advised gentle exercise and an anti-inflammatory cream.  (PageID.330.) But she returned only a few days later, on October 1, 2013, complaining of severe swelling since her last examination.  Dr. McDermott gave her another

10

injection.  (PageID.329.) Later that month, Plaintiff said her pain was better since the injection, but she

still had weakness.  She admitted, though, that the brace had helped.  Dr. McDermott ordered physical

therapy and strengthening exercises.  (PageID.328.)  On December 10, 2013, the last note from Dr.

McDermott, it was noted that Plaintiff had increased pain over the last year.  But a physical examination

again revealed Plaintiff had full range of motion and the knee was stable.  There was 5/5 strength.  The

doctor's impression was mild arthritis and he gave Plaintiff another injection.  (PageID.327.)

Though Plaintiff claims that her need of a cane stems from the findings of her orthopedic

surgeon, it may be the case that she claims further records support her need for a cane.  Here too,

however, she cannot succeed.  On January 5, 2013, Plaintiff went to the ER complaining of left sided

weakness lasting two days.  She felt she was "dragging" her leg. (PageID.302.) MRIs of her brain and

spine were negative, and instead a nerve compression at L5/S1 was suspected.  She was instructed to

follow up with her primary care physician or a neurologist. (PageID.308.)  She treated with Dr. Narendra

Patel on March 24, 2014.  The doctor noted that an extensive workup had been negative. (PageID.322.)

On exam she was "very able."  She could walk on her toes, though she had weakness.  The doctor found

a "[s]trong possibility of a purely subjective weakness due to inconsistent history."  Dr. Patel felt Plaintiff

gave a poor effort during an EMG exam.  (PageID.323.)

While the Court does not doubt that Plaintiff's knee and other impairments impose on her

a certain amount of limitation, as the above discussion makes plain the objective medical evidence simply

does not support Plaintiff's assertion she needs a cane to ambulate.  While she has complained of weakness

and pain, she has been treated with therapy and injections.  Physical examinations of her right knee have

consistently demonstrated full range of motion and strength.  No prescription for a cane was given, and

none of the surgeon's treatment notes even indicate she used a cane. While Dr. McDermott did mention the use of a walker and crutches, this note was his first evaluation of Plaintiff, soon after she had sustained the injury. It predated her surgery, and there is no indication such limitation continued after the surgery. Instead it appears injections, therapy, and the use of a brace were sufficient to treat Plaintiff's impairments. As such, this claim of error is denied.

### 2.    Plaintiff's "Borderline" Age.

As noted above, the ALJ found that Plaintiff became disabled on January 8, 2013, the date her age category shifted to advanced age. Plaintiff argues the ALJ committed reversible error by "mechanically" applying the age rules in a "borderline" situation because Plaintiff's date last insured was six months and eight days from her fifty-fifth birthday, the date the ALJ found she became disabled. She further faults the ALJ for failing to discuss whether a borderline age situation existed during the period before her date last insured.

Social Security regulations note that the Commissioner will apply the age categories as follows:

> When we make a finding about your ability to do other work under [the sequential evaluation,] we will use the age categories in paragraphs (c) through (e) of this section. We will use each of the age categories that applies to you during the period for which we must determine if you are disabled. We will not apply the age categories mechanically in a borderline situation. If you are within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors of your case.

20 C.F.R. §§ 404.1563(b), 416.963(b).

"[N]othing in this language obligates an ALJ to address a claimant's borderline age situation in his opinion or explain his thought process in arriving at a particular age-category determination." *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 399 (6th Cir. 2008); *Caudill v. Comm'r of Soc. Sec.*, 424 F. App'x 510, 516–17 (6th Cir. 2011); *Bouschor v. Comm'r of Soc. Sec.*, No. 2:15-cv-47, 2016 WL 336099, at * 7 (W.D. Mich. Jan. 28, 2016); *Dultmeyer v. Comm'r of Soc. Sec.*, No. 3:12-cv-2941, 2014 WL 991900, at * 2 (N.D. Ohio Mar. 13, 2014).  Plaintiff's claim for DIB did not present a "borderline" situation.  She was not "within a few days" of reaching an older age category.  She did not reach the category of a person of advanced age under §§ 404.1563(e), 416.963(e) until over six months after her date last insured.  Six months is more than a "few months."  *See Byes v. Astrue*, 687 F.3d 913, 918 (8th Cir. 2012) (collecting cases).  "The fact that age categories are not to be applied mechanically, [ ] obviously does not mean that a claimant must be moved mechanically to the next age category whenever her chronological age is close to that category." *Van der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x 521, 528 (6th Cir. 2006) (quoting *Crady v. Sec'y of Health & Human Servs.*, 835 F.2d 617, 622 (6th Cir. 1987)); *see Caudil*, 424 F. App'x at 516–18.

But even if this was a "borderline" situation, Plaintiff still would not succeed.  In *Bowie*, the Sixth Circuit considered the non-binding guidance provided by the Hearings, Appeals and Litigation Law Manual of the Social Security Administration (HALLEX).[4] *Bowie*, 549 F.3d at 397–99.  HALLEX then

---

[4]  HALLEX is an internal guidance tool. It does not have the force of law. *See Estep v. Astrue*, No. 2:11-cv-17, 2013 WL 212643, at * 11 (M.D. Tenn. Jan. 18, 2013) (collecting cases). "HALLEX does not impose judicially enforceable duties on either the ALJ or this [C]ourt." *Morris v. Comm'r of Soc. Sec.*, No. 1:11-cv-154, 2012 WL 4953118, at *12 (W.D. Mich. Oct. 17, 2012) (Scoville, MJ) (quoting *Lockwood v. Comm'r of Soc. Sec.*, 616 F.3d 1068, 1072 (9th Cir. 2010)).

endorsed, and it continues to endorse[5] a "sliding scale" approach, wherein "the claimant must show

progressively more additional vocational adversity(ies)—to support use of the higher age as the time period

between the claimant's actual age and his or her attainment of the next higher age category lengthens."

*Bowie*, 539 F.3d at 397 (citing HALLEX at II–5–3–2).  The Sixth Circuit noted that HALLEX provided

examples of "additional vocational adversities" to consider when deciding whether to apply the higher age

category. These included being barely literate in English, having only a marginal ability to communicate in

English, and having work experience in one isolated job and one isolated industry or work setting. *Id.*

Plaintiff has not and cannot demonstrate that she had such significant additional vocational

adversities that at six months and eight days away from the next age category, the ALJ was required to *sua*

*sponte* discuss the possibility of applying an age category higher than Plaintiff's chronological age. The Sixth

Circuit has found no error where the period of time from the next age category was much shorter, *see id.*

*at* 396 (less than two months), and where the claimant had far more significant vocational adversities, *see*

*Caudill*, 424 F. App'x at 513, 518 (work in an isolated industry as a coal mine roof bolter and evidence

that he was barely literate); *see also Henry v. Colvin*, No. 14-cv-445, 2016 WL 1171531, at *9–10

(E.D. Ky. Mar. 23, 2016); *Ramsey v. Soc. Sec. Admin.*, No. 3:14-cv-1917, 2016 WL 727547, at *7–8

(M.D. Tenn. Feb. 24, 2016); *Spiteri v. Colvin*, No. 14-14140, 2015 WL 7258749, at *4 (E.D. Mich.

Nov. 9, 2015).  Here, by contrast, Plaintiff has at least a high school education and is able to communicate

---

[5] Effective March 25, 2016, the Social Security Administration moved the guidance regarding borderline age issues formerly found at HALLEX II-5-3-2 to HALLEX I-2-2-42 and I-3-3-25. The guidance provided in HALLEX I-2-2-42 continues to emphasize that there is no set definition for "a few days to a few months. It means a small number, not to exceed six months: "SSA does not have a precise paradigmatic definition of the phrase 'within a few days to a few months.' The word 'few' should be defined using its ordinary meaning, e g., a small number. Generally, SSA considers a few days to a few months to mean a period not to exceed six months." HALLEX I-2-2-42 (S.S.A. Mar. 25, 2015), *available at* https://www.ssa.gov/OP_Home/hallex/I-02/I-2-2-42.html.

in English.

For all the above reasons, this claim of error is denied.

### 3.    The ALJ Properly Relied on the Vocational Expert Testimony.

Finally, Plaintiff argues the ALJ improperly relied on the vocational expert's testimony from the administrative hearing.  First of all, Plaintiff appears to argue the ALJ was required to incorporate the use of a cane into his hypothetical to the expert.  While the ALJ may satisfy his burden through the use of hypothetical questions posed to a vocational expert, such questions must accurately portray Plaintiff's physical and mental impairments.  *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996). The hypothetical question which the ALJ posed to the vocational expert simply asked whether there existed jobs which an individual could perform consistent with Plaintiff's RFC, to which the vocational expert indicated that there existed in the national economy approximately 502,000 such jobs.  As noted above, the ALJ's RFC determination is supported by substantial evidence and there was nothing improper or incomplete about the hypothetical questions the ALJ posed to the vocational expert.

Next, Plaintiff contends that the expert provided information which was inconsistent with the Dictionary of Occupational Titles ("DOT") and that the ALJ failed to develop the record to resolve the inconsistencies. The Sixth Circuit has rejected the argument that the Commissioner is bound by the DOT's characterization of occupations, holding that "the ALJ and consulting vocational experts are not bound by the Dictionary in making disability determinations because the Social Security regulations do not obligate them to rely on the Dictionary's definitions." *Wright v. Massanari*, 321 F.3d 611, 616 (6th Cir. 2003) (citing *Conn v. Sec'y of Health & Human Servs.*, 51 F.3d 607, 610 (6th Cir. 1995). Under SSR 00-4p, the ALJ has a duty to "[i]dentify and obtain a reasonable explanation for any conflicts between occupational

evidence." *See* SSR 00–4p, 2000 WL 1898704 at *1 (Dec. 4, 2000). The Sixth Circuit has construed this SSR to mean "that the Social Security Administration imposes an affirmative duty on ALJs to ask VEs if the evidence that they have provided 'conflicts with the information provided in the DOT.'" *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 606 (6th Cir. 2009).

Here, the ALJ fulfilled that duty when he asked the expert if his testimony was consistent with the DOT. (PageID.73.) The expert responded that it was. (PageID.73.) The ALJ specifically asked Plaintiff's counsel whether he had any questions for the expert, but counsel did not question or otherwise object to the expert's testimony regarding consistency with the DOT, or on any other matter. (PageID.73.)

If Plaintiff believed that the vocational expert's testimony conflicted with the DOT, she had an obligation to address the issue at the administrative hearing rather than raising it in the first instance in this court. *See Beinlich v. Comm'r of Soc. Sec.*, 345 F. App'x 163, 168–69 (6th Cir. Sept. 9, 2009) (where plaintiff "had the opportunity to cross-examine the [vocational expert] and bring out any conflicts with the DOT. . . [t]he fact that plaintiff's counsel did not do so is not grounds for relief"); *Ledford v. Astrue*, 311 F. App'x 746, 757 (6th Cir., Dec. 19, 2008) (where claimant "did not bring to the attention of the [ALJ] the alleged conflict between the oral testimony and the job descriptions in the [DOT]," the court observed that "nothing in applicable Social Security regulations requires the [ALJ] to conduct his or her own investigation into the testimony of a vocational expert to determine its accuracy, especially when the claimant fails to bring any conflict to the attention of the [ALJ]"). In sum, the Court discerns no error in the ALJ's questioning of the vocational expert or in his reliance on the vocational expert's testimony. This claim of error is denied.

## CONCLUSION

For the reasons set forth herein, the Commissioner's decision is supported by substantial evidence and therefore will be **AFFIRMED.**

A separate judgment shall issue.

Dated:  April 6, 2017                                        /s/ Paul L. Maloney
                                                             PAUL L. MALONEY
                                                             United States District Judge